Bancroft *v.* Winspear.

Judgment accordingly.

[MONROE GENERAL TERM, September 5, 1865. *Johnson, E. D. Smith* and *J. C. Smith,* Justices.]

---

## BANCROFT *vs.* WINSPEAR, impleaded, &c.

A bond to a constable, conditioned to keep him harmless and indemnified of, from, and against all damages, costs, *charges,* trouble and expense that he may be put to, sustain or suffer by reason of a levy upon and sale of property on execution, is broken, and an action may be maintained upon it, as soon as a *liability* is incurred by the officer in consequence of such levy and sale.

The obligee is not bound first to advance his own money, to discharge a liability, before he can seek indemnity by an action upon the bond.

In an action brought upon such a bond the plaintiff may recover not only the amount he has actually expended in the defense of an action brought against him by one claiming to be the owner of the property levied on, but the costs and counsel fees of his attorney and counsel in defending such suit, although the latter have not been actually paid by the obligee.

If, through the error of the referee, in such an action, the plaintiff fails to recover such costs and counsel fees, the judgment in that suit will be a bar to a second suit upon the bond, brought to recover such costs and counsel fees.

The law will not permit a party who has recovered in one action a portion of an entire demand, to make the residue of it the subject of another suit.

The decision in *Scott* v. *Tyler,* (14 *Barb.* 202,) overruled.

THE evidence in this cause shows that the plaintiff, as one of the constables of Erie county, on the 17th of June, 1859, had an execution which had been issued to him upon a judgment recovered before a justice of the peace of the town of

Elma, against the property of Louis Bracletal. On that day the defendant and John Wright, the plaintiff in the execution, executed and delivered to the plaintiff a bond, in the penal sum of $200, which, after reciting that the plaintiff, as constable, had levied, or was about to levy, such execution upon certain property then or lately in the possession of Louis Bracletal, with the intent to sell the same in order to satisfy the execution, was conditioned that if the obligors should at all times and forever thereafter keep the said William H. Bancroft, harmless and indemnified, of, from and against all damages, costs, charges, trouble and expense, of what nature soever that he might be put to, sustain or suffer, by reason of such levy and sale, or either, then the obligation to become void. The plaintiff, as constable, afterwards sold the property referred to, for the purpose of satisfying the execution. And after that, in August, 1859, he was sued for doing so, by George F. Bracletal, who seems to have claimed title to the property. The plaintiff defended that action successfully, and recovered judgment therein for his costs and disbursements, adjusted at $131.59, on the 27th day of August, 1862. The obligors in the bond were duly notified of the pendency of this suit, but took no part in its defense. The plaintiff failed to collect the judgment he had recovered for costs, and brought an action in this court against the defendants upon the bond, to recover the amount of it from them. They defended that action, and it was referred to a referee, who reported in favor of the plaintiff for the sum of $33.14, being the amount with interest, which the plaintiff had actually paid out in the defense of the action against him. And the residue of the plaintiff's claim, being the costs and counsel fees of his attorney and counsel in defending the suit against the plaintiff, the referee rejected, on the ground that it had not actually been paid by the plaintiff. Upon that report judgment was entered for the plaintiff for the amount reported due, and for the defendants for their costs. In the spring and summer of 1863, the plain-

Bancroft *v.* Winspear.

tiff paid the amount due to his attorney and counsel for defending the suit which had been prosecuted against him as constable for his proceedings under the execution ; and afterwards brought this action upon the defendants' bond to recover the amount so paid. Upon the trial of the action in the justice's court, the plaintiff had judgment, from which the defendant Winspear appealed to the county court of Erie county. Upon a trial had in that court, a verdict was directed for the plaintiff. The defendant insisted that the judgment in the former action of the plaintiff against the defendants was a bar to the plaintiff's right to recover in this cause. The county court held otherwise, and the defendant excepted. From the judgment entered upon the verdict, the defendant appealed to this court.

*Jas. H. Allen,* for the appellant.

*Johnson Parsons,* for the respondent.

*By the Court,* DANIELS, J. The right of the plaintiff to recover in this action depends in a great degree upon the proper construction of the bond executed by the defendants. In order to arrive at that, it is necessary in the first instance to ascertain the intention of the parties, so far as it may be done by the terms which they have employed ; and for that purpose those terms may properly be considered in view of the circumstances under which they were used ; for it is a general rule of construction that the writing to be construed, " may be read by the light of surrounding circumstances, in order more perfectly to understand the intent and meaning of the parties." (1 *Greenl. on Ev.* § 277, *Blossom* v. *Griffin,* 3 *Kern.* 569.)

The plaintiff in this case was an officer about endeavoring to collect an execution in favor of one of the obligors in the bond, and at the instance of the other who was acting as agent for the principal, by the levy and sale of property not indis-

putably belonging to the judgment debtor. His obligations were limited to the discharge of his duties as an officer, with no prospect of gain beyond the fees allowed by statute for the service he was to perform. To carry on a litigation for the purpose of settling the title to the property and advance the moneys which, from time to time, might and probably would be required in the course of it, were no part of those duties. On the contrary, those burthens would ordinarily and justly be expected to be borne by the plaintiff in the execution, who alone could be benefited by the result of the litigation. For the purpose of fully protecting the officer, therefore, the obligation given to him should impose those duties upon the person for whom he was about to act. But still, if the language used by the parties indicates a different intention it should be carried into effect, even though the officer would be required by it to sustain in the first instance all the consequences of the litigation. When that intention is ascertained the court is to be governed by it, even though it may produce hardships in the case, which, in reality, appear to be unjust. The responsibility of them is not upon the court, nor upon the law, for they result exclusively from the imperfect manner in which the parties selected the terms to express their intention. When that selection is once made, and the terms are embodied in the contract, they are alike conclusive upon the parties and the court. The only duty devolving upon the latter is that of declaring the legal import of the terms used.

By the condition of the bond in controversy the obligors bound themselves to keep the plaintiff harmless and indemnified of, from and against all damages, costs, charges, trouble and expense, that he might be put to, sustain or suffer by reason of the levy and sale, or either of them. And under the facts of this case the question arises whether a liability incurred by the officer in consequence of the levy and sale is sufficient to constitute a breach of this condition. It can only be maintained that it is by force of the word "charges." Under the other terms used, the obligors were liable to compensate

Bancroft *v.* Winspear.

the officer for trouble actually had, or moneys paid out ; and they furnished him full and complete protection, so far as it might be required by him, if the intention was to limit the indemnity to damages actually sustained, exclusive of mere liabilities. Some further object may therefore reasonably be presumed to have been within the intention of the parties in the use of this word "charges." And if it will not fairly include liabilities, it is difficult to imagine what that object could have been or what office it can perform that would ordinarily be the effect of it as the word is used in common parlance. And the supposition of the law is, that the parties made use of it in the same sense.

The legal import of this term, when used in a contract like the present one, first came before this court for construction in the case of *Donely* v. *Rockfeller*, (4 *Cowen*, 253.) The bond in that case was given to protect the plaintiffs as overseers of the poor, and the town which they represented, from costs, charges, rates, assessments, damages and expenses by reason of the birth, &c. of an illegitimate child. The objection was taken that they could not recover without proof of actual damages by the payment of money, or otherwise. That a liability to pay was not sufficient. And such was the determination of this court. From this conclusion, Woodworth, justice, dissented, and in the course of his opinion says : "The construction to be given to a bond of indemnity to a public officer is not that he shall first advance his own money, or that of the town, and then seek remuneration, but that the party covenanting, shall, in the first instance, make advances so as to relieve the officer from the burthen." (*Id.* 258.) This doctrine was fully sanctioned by the court of errors, when the case was afterwards before it. For that court reversed the judgment of the supreme court, and a prominent ground of that reversal rested upon the construction of the word "charges." The chancellor, in the course of his opinion in that court, remarks : "The indemnity consists in securing the town against charges and expenses, and against

taxes, rates and assessments by reason of the birth and main-
tenance of the child, and this could only be fully and effect-
ually done by keeping the infant when born from becoming
chargeable, or by providing means to defray the charges in
which its birth and maintenance should involve the town."
(8 *Cowen*, 628.)   Senator Spencer, who delivered the other
opinion for reversal, arrives at the same conclusion upon the
construction of the condition contained in the bond.   Speak-
ing of the terms of the bond he says : " They (the obligors)
are to indemnify against all charges, &c., or expenses, by rea-
son of its birth, education or maintenance.   Technically, this
condition was broken the moment the child was born, for
then it became a charge on the town, and that is the thing
against which the defendant covenanted." (*Id.* 653.)   The
point, it will be observed, was directly involved in the deci-
sion of that case, and the highest court of law and equity in
the state held the word "charges," when used in an instru-
ment like the present one, to be the equivalent for liability.
And however this court may at times disregard or nullify its
own adjudications, it is not at liberty to do so with those of
that tribunal.   They must stand as declaratory of the law,
until they are set aside by a court of equal authority to that
which pronounced them.   The doctrine of this case has since
been followed by this court in the case of *Chace* v. *Hinman,*
(8 *Wend.* 452.)   And it has been directly sanctioned in *Webb*
v. *Pond,* (19 *id.* 423,) and by the court of appeals in *Gil-
bert* v. *Wiman,* (1 *Comst.* 550.)   And by the superior court
court of New York in *McGee* v. *Roen,* (4 *Abbott,* 8.)

The same term was employed in the bond in the case of
*Campbell* v. *Jones,* (4 *Wend.* 306.)   And in that case this
court came to a conclusion adverse to that of *Rockfeller* v.
*Donely,* but without any reference whatever to that deci-
sion, or the doctrine maintained by it.   Bronson, J. also
refers to it as of questionable authority in the course of his
opinion in *Aberdeen* v. *Blackmar.*   (6 *Hill,* 324.)   The case
of *Churchill* v. *Hunt,* (3 *Denio,* 321,) does not consider it

in the view of it presented here. That case regards it as having been properly decided under the provisions of the statute in conformity to which the bond was given. But the case itself was not decided in the manner in which it was, because there was any thing in the statute requiring it to be disposed of in that way. There was nothing in the statute imposing upon the words used in the bond, any different legal effect from that which they would ordinarily be entitled to have when used ·in other bonds. But the court referred to the statute, and the objects intended to be ·secured by its enactment, as indicating the propriety of the construction given to the bond. If it does not sustain it certainly it is not in conflict with the view here taken of *Donely* v. *Rockfeller*.

The cases of *Thomas* v. *Allen*, (1 *Hill*, 145,) and *Matter of Negus*, (7 *Wend.* 501,) have no application to the present controversy. They were upon unconditional covenants to pay. But the case of *Scott* v. *Tyler*, (14 *Barb.* 202,) seems to be directly at variance with the doctrine of *Donely* v. *Rockfeller*. If that stood as the only authority upon the point, the duty of so construing and applying legal principles as to render them uniform as far as possible would require it to be followed in this case. The interests of the public require that all unnecessary conflict in the exposition of legal principles should be avoided. But, as has been seen, the case of *Scott* v. *Tyler*, seems to be an exceptional case, in conflict with the determination of the highest court in the state since sanctioned by a decision of equal authority, and in one instance by the explicit rulings of this court, which would seem to constitute a sufficient reason for disregarding its authority. This conclusion has been reached reluctantly, on account of the high character and learning of the tribunal which pronounced that decision. But the paramount authority is against it, and that authority it is the duty of this court to follow.

Under the construction of the bond maintained by the authorities referred to, the demand which is made the immediate·

subject of the present suit could have been legally recovered in the previous suit upon the bond. It was error in the referee to reject it, and consequently the judgment in that action is a bar to the one now before the court. For the law will not permit a party who has recovered in one action a portion of an entire demand, to make the residue of it the subject of another suit. (2 *Parsons on Contracts*, 463,4. *Guernsey* v. *Carver*, 8 *Wend.* 492. *Bendernagle* v. *Cocks,* 19 *id.* 207. *Fish* v. *Folley*, 6 *Hill*, 54. *Beach* v. *Crain*, 2 *Comst.* 86, 96.)

But it is difficult to see how the result would be changed, even though the bond were construed to be one of indemnity merely against damages actually sustained by the obligee. For the breach of the condition was entire, as far as it extended, although not amounting to a breach of the entire condition. If another action should be brought against the plaintiff by some other person on account of the levy and sale, resulting in further damages to him, there can be little doubt but he would be entitled to resort to the bond for reimbursement; for so long as he may be farther molested on that account the bond is a continuing security. The obligors are not discharged unless at all times and forever thereafter, they keep the plaintiff harmless and indemnified. But that construction of it does not aid the plaintiff in sustaining this action. The demand for the recovery of which it was brought, as well as that recovered in the previous suit, both originated in and arose out of, one act; which was the prosecution of an action against the plaintiff which proved to be destitute of merit. The judgment recovered in it was entire, and included the claim now insisted upon, as well as that already satisfied. If they can be regarded as different demands they are still both created by the same indivisible cause, and are more properly distinguished as different items of the same demand. Such in reality they are. If a separate action can be maintained for each, there is no reason why the subdivision could not be further extended, depending upon amounts and manner of

Bancroft *v.* Winspear.

the payments made to extinguish them. The principle is the same. That which will protect two suits is equally as capable of protecting any number, depending only on the number of payments made.

The violation of the condition of the bond consisted in the defendant's failure to indemnify and keep the plaintiff harmless from the consequences of the suit brought against him. And the different items of the plaintiff's demand growing out of that failure contributed to form the damages he sustained by reason of it. Those items, taken together, constitute an entire demand, created by one and only one, breach of the condition of the bond. The case of *Wright* v. *Butler*, (6 *Wend.* 284,) is entirely different from this. There the plaintiff was indorsee of a note held by another person. The plaintiff had been charged as indorser, and made payments upon the note at different times to the holder. As he made the payments he sued a previous indorser to recover them back. And the court held that a previous recovery was no bar to a future action for a subsequent payment. The action was not brought upon the note, but upon the implied request growing out of the relations between the indorser and indorsee to pay the money. The chancellor, who delivered the only opinion in the case, says : " If the plaintiff had been the legal owner of the note at the time this suit was commenced, so as to have been in a situation to strike out the subsequent endorsements, and recover against the prior indorser in the usual manner, by a special count on the note itself, I think this suit for money paid for the use of the defendant and at his request, could not have been sustained." (*Id.* 291.) And the case of *Halsey* v. *Reed*, (9 *Paige*, 446,) which is much the same in principle, was decided upon the authority of *Wright* v. *Butler*. There is no obvious conflict between these cases and those which declare the salutary doctrine that an entire demand can not be so divided as to make it the successful subject of two different actions. If the law permitted it to be done, the maintenance of this action would be the subject of

special gratification. For it is manifest that great injustice has been done to the plaintiff. His claim for indemnity is meritorious and ought to have been fairly and honorably responded to by the obligors in the bond. But this injustice results from the erroneous view taken by the referee of the condition in the bond, which according to well settled principles of law, this court has no power to correct in this action.

The judgment of the county court should be reversed.

Judgment reversed.

[ERIE GENERAL TERM, September 5, 1865. *Grover, Marvin* and *Daniels,* Justices.]